**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


WILLIAM REDENIUS,

      Petitioner,

v.                                                              Case No. 8:15-cv-2620-T-33AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>ORDER</u>

Petitioner William Redenius, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1.)  He challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit, in and for Polk County, Florida, in 2005.  Respondent filed a response (Doc. 11), which raises no challenge to the petition's timeliness.  Redenius filed a reply (Doc. 16) and an amended reply (Doc. 18).  Upon review, the petition must be denied.

## PROCEDURAL HISTORY

A jury convicted Redenius of three counts of sexual battery on a person less than 12 years of age (counts one, three, and four), two counts of promoting the sexual performance of a child (counts five and ten), one count of lewd and lascivious exhibition (count six), and two counts of lewd battery (counts eight and nine).  (Doc. 13, Ex. 1, pp.

103-04.)[1]  The state court sentenced him to terms of life imprisonment on counts one, three, and four, and terms of fifteen years in prison on all other counts.  (Doc. 13, Ex. 1, pp. 117, 124.)  The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 13, Ex. 4.)

Redenius' motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850 was dismissed as time-barred.  (Doc. 13, Exs. 6, 7.)  The state appellate court reversed, directing the state postconviction court to conduct an evidentiary hearing to determine the motion's timeliness.  *Redenius v. State*, 87 So.3d 838 (Fla. 2d DCA 2012). After finding the postconviction motion to be timely filed, the state court provided Redenius an opportunity to amend three of his claims.  (Doc. 13, Ex. 11, pp. 70-72.)  After the deadline to do so expired, the state court summarily denied the motion in its entirety.  (Doc. 13, Ex. 11, pp. 73-78.)   The state appellate court granted Redenius a belated postconviction appeal.   (Doc. 13, Ex. 14.)   It *per curiam* affirmed the denial of postconviction relief.  (Doc. 13, Ex. 17.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

---

[1] The State entered a notice of *nolle prosequi* on counts two (sexual battery on a person less than 12 years of age) and seven (sexual battery with force or deadly weapon).  (Doc. 13, Ex. 1, p. 125.)

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable . . . an unreasonable application is different from

an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court denied Redenius relief without discussion. The court's decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state

court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 181-82.  Redenius bears the burden of overcoming by clear and

convincing evidence a state court factual determination.  "[A] determination of a factual

issue made by a State court shall be presumed to be correct. The applicant shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."  28

U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not

to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.),

*cert. denied*, 534 U.S. 1046 (2001).

## EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the

petitioner must exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C.

§ 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner

must give the state courts an opportunity to act on his claims before he presents those

claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d

880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a

federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).   A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.   28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default

which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *Unitea States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Heaa*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

All of Redenius' claims allege ineffective assistance of trial counsel. Such claims are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Redenius must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A petitioner cannot meet his burden merely by

showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Ground Four**

The State alleged that Redenius engaged in sexual activity with the two minor victims, B.W. and J.N., and directed the victims to engage in sexual activity with each other. This took place at Redenius' apartment.  The State presented testimony from B.W. and J.N. indicating that some of the sexual activity occurred near Redenius' computer, which had a camera.  (Doc. 13, Ex. 1b, pp. 320-28, 333; Ex. 1c, pp. 449-51, 458.)  At trial, the State entered into evidence a photograph allegedly depicting J.N. and B.W. in a sex act. The State asserted that this photograph was evidence of Redenius' guilt on counts five and ten (promoting the sexual performance of a child) and count nine (lewd battery).  (Doc. 13, Ex. 1f, pp. 926-28, 931-32.)  Redenius alleges that trial counsel was ineffective for failing to move to suppress the photograph on the basis that he could not have created it. Specifically, he alleges that the photograph was obtained "from the internet" prior to his meeting the victims.  (Doc. 1, p. 9.)

The state court set forth relevant facts and addressed Redenius' ineffective assistance claim:

> 10. The photo referred to in this portion of Defendant's motion purportedly showed sexual activity between the two boys. Some background is necessary to understand Defendant's grievance. At trial [J.N.] testified that Defendant had a computer attached to his camera and on one or more occasions would photograph the boys engaged in sex acts, though at another point he stated he wasn't sure if photos were actually taken. After taking the boys' statements Detective Skinner obtained a search warrant for Defendant's apartment, but Defendant appeared to have vacated the premises and no computer was found. Eventually Defendant was located and arrested at Great Smoky Mountains National Park in Tennessee. At this time his backpack was searched and a compact disc was recovered. The disc was examined, at which time the image was seen and Lakeland authorities were notified.
>
> 11. Several witnesses were asked about this photo at trial, beginning with

[B.W.], who stated that he recognized himself and [J.N.] in it. It appears that the photo was first shown to [B.W.] at his father's home in Alabama by a detective and an Assistant State Attorney.  On cross-examination [B.W.] denied that he told them he didn't recognize the photo. [J.N.] also identified the photo. However, he may have told Detective Skinner otherwise. [J.N.]'s grandmother . . . testified that she recognized [J.N.] in the photo and that the other boy looked like [B.W.] based on his hairline. Defendant denied having taken the photo. In fact, he testified that he did not know how to operate the camera tha[t] had come with his computer.  He did not know how the park rangers came to find the CD in his backpack, and stated that he had never seen the photo before his trial. He did not believe the photo depicted either [J.N.] or [B.W.], whom he admitted having befriended.

12. Up to this point this review suggests that Defendant has confused the concepts of admissibility and weight of the evidence. The fact his jury apparently believed the State's witnesses as to who was shown in the photo could not have been the fault of [counsel] who, as the foregoing exhibits confirm, impeached the witnesses with prior inconsistent statements. However, on closer examination the motion is found also to be premised on the testimony of Lakeland Detective Kevin Shiver, who described himself as an expert in "data recovery."  Detective Shiver stated that he examined the disc provided by the park rangers and copies [sic] the photo from that disc. Based on quality and other factors he believed it had been made by a video or web camera. However, when asked to date the photo Shiver gave the date January 10, 2002. As Defendant points out in his motion, he did not begin work at the Circle K until after that date. The dates of his employment were stipulated to at trial, and it is undisputed that he did not know either of the boys until after taking that job. Accordingly, he argues that [counsel] "should have used this information to keep the photo out of court." Ironically, it is [counsel] who got Detective Shiver to establish the date. The motion does not suggest any alternative argument [counsel] could have made, nor can the Court think of any.  Accordingly, the Court concludes that this portion of the motion is also conclusively refuted. [FN]

> [FN]  Defendant does state that he wanted [counsel] to hire an expert to "try to prove that the photo was not the boys by comparison." However, he adds that [counsel] did so, only to find "they could not determine one way or another if it was in fact the boys." Thus, [counsel] cannot be cited for ineffectiveness even if, as Defendant alleges, he did not permit Defendant to view the expert's documents.

(Doc. 13, Ex. 11, pp. 76-77) (court's record citations omitted).

Shiver, a Lakeland Police Department detective, testified that he had formal training

in computer forensics, including advanced data recovery.   (Doc. 13, Ex. 1d, p. 678.)  He

testified to his belief that the photograph originated from either a video camera or a web

cam.  (*Id.*, p. 681.)  Shiver testified on cross-examination that he believed the photograph

was last accessed on January 10, 2002, and therefore could have been created earlier.

(*Id.*, pp. 687-89.)  As the state court noted, it was undisputed that Redenius did not know

the victims until he started work at Circle K after this date.[2]

Redenius does not demonstrate that counsel was ineffective for failing to move to

suppress the photograph because the agreed-upon timeline meant he could not have taken

it.[3]  The state court found there was no basis for counsel to move to suppress the

photograph.  This Court must accept the state court's determination that, under Florida's

evidentiary law,[4] counsel had no grounds to seek suppression.  *See, e.g., Herring v. Sec'y,*

*Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court

already has told us how the issues would have been resolved under state law had

[petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a

'fundamental principle that state courts are the final arbiters of state law, and federal

habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*,

119 F.3d 1538, 1549 (11th Cir. 1997)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.

---

[2] B.W. and J.N. testified that they met Redenius at a Circle K store.  (Doc. 13, Ex. 1b, pp. 309-10; Ex. 1c, p. 435.)  The prosecution and defense stipulated that Redenius began working at Circle K on January 22, 2002.  (Doc. 13, Ex. 1d, pp. 692-93.)

[3] At the start of trial, counsel moved to suppress all of the items found in Redenius' backpack.  He asserted that the warrantless search of the backpack was too remote in time and place from Redenius' arrest to be a valid search incident to arrest.  (Doc. 13, Ex. 1, pp.94-95; Ex. 1b, pp. 218-20.)  The court denied the motion.  (Doc. 13, Ex. 1, p. 102; Ex. 1b, pp. 275-76.)

[4] Redenius does not allege any federal constitutional basis upon which counsel could have moved to suppress the photograph.

2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection."). *See also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law binds a federal court sitting in habeas corpus.").

Counsel cannot be deemed ineffective for the reason submitted by Redenius.  He has not shown that the state court's finding was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Ground Four warrants no relief.

**Ineffective Assistance Of Counsel For Failing to Call Witnesses At Trial**

In his remaining grounds, Redenius makes numerous allegations that counsel was ineffective for failing to call witnesses to testify at trial. Whether to call a witness is a strategic decision by counsel. *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel.").  "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted).

Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). In analyzing the claim under *Strickland*, the focus is on whether counsel's strategic decision was a reasonable one. *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001) ("Moreover, '[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)); *Minton v. Sec'y, DOC*, 271 Fed. App'x 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

**Ground One**

Dr. Mammas was an emergency room doctor who examined the victims. She did not testify at trial. Instead, the State called Connie Fleming, a nurse who examined the victims approximately one week after the last incidents of sexual activity. Redenius argues that trial counsel was ineffective for failing to call Mammas, who he claims examined J.N. and B.W. "within two hours of [the] alleged assault," because she testified during her deposition that she could not find any evidence to support the allegations. (Doc. 1, p. 5.) Specifically, Redenius asserts that Mammas stated that she found "no sem[e]n, no alcohol, no cuts or bruises, and no DNA." (*Id.*) Redenius argues that he would have been acquitted had she testified.

The state court identified Redenius' ineffective assistance claim involving Mammas

as follows:

> 5.  Defendant claims he received ineffective assistance from his trial attorney. . . . He identifies a number of separate omissions.  Although portions of the motion are not a model of clarity the Court believes that these may be fairly summarized as follows: (a) [counsel] did not subpoena Dr. Mammas, who examined the two boys at [Lakeland Regional Medical Center], despite the fact that he was accused of knocking them off a bicycle, dragging them into his apartment, cutting one of them with a knife, forcing them to drink gin, and raping them repeatedly.

(Doc. 13, Ex. 11, p. 74.)

> The state court then rejected Redenius' claim of ineffective assistance:

> 6.  Although it is true that defense counsel decided not to call Dr. Mammas as a witness after apparently issuing her a subpoena, the record of Defendant's trial conclusively refutes any suggestion [counsel] was ineffective with regard to this decision.  As the motion itself states, the boys were also examined by a nurse [Connie Fleming] who has training with victims of sexual abuse.   A review of Ms. Fleming's testimony establishes that she is a nurse practitioner employed with the Children's Advocacy Center.  Her goal was to look for signs of anal or oral penetration.  She could make "no specific findings" with respect to [B.W.]'s anal exam, but 95% of victims display none.  This is so because the tissue is "very stretchy" and heals quickly.  [J.N.] also displayed no physical signs of abuse.  More to the point of Defendant's allegations, Ms. Fleming was aware from medical records that Dr. Mammas had examined the boys about a week before and found no injuries.  In addition, as will be detailed in a separate paragraph below, Detective Skinner also confirmed there were no visible injuries at the ER.  Accordingly, Dr. Mammas' testimony would have been duplicative of what was already known.  The State was able to present no evidence of any physical injuries to either boy, despite the fact they may have claimed otherwise.

(*Id.*, p. 75) (court's record citations omitted).

The state court noted that the prosecution did not present evidence of physical injury to either victim.  At trial, while discussing B.W.'s physical exam, Fleming testified, "[t]he medical literature shows us that anywhere between 85 and 95 percent of people who are the victims of anal, anal penile penetration have absolutely no physical findings.  So it

would be expected that this child would have no physical findings, and that is, indeed, what he had." (Doc. 13, Ex. 1d, pp. 613-14.)  Similarly, she testified that J.N.'s exam was "normal," and that this result was expected.  (*Id*, p. 617.)  Fleming explained that "the material that makes up the tissues of the anus is very similar to what's in the mouth.  It's very stretchy and it heals very quickly.  So anything that would injure that tissue the findings would be gone within hours or a day or so most likely unless it was a very large area in which shows that's your five percent." (*Id.*, p. 614.)  She further stated that the frequency of abuse has little to do with the likelihood of physical findings.  (*Id.*, p. 627.)  Accordingly, she concluded that the "lack of physical findings neither confirms nor negates the allegation of abuse." (*Id.*, p. 630.)

Thus, through Fleming's testimony, the State offered a reason why the lack of physical injury did not undermine the victims' testimony about the sexual activity.  Even if Mammas testified that the victims had no physical injuries closer to the time they stated sexual activity occurred, Redenius has not established a reasonable probability that this testimony would have changed the outcome of trial.  He offers no evidence that Mammas would have testified contrary to Fleming regarding the probability of rapid healing from physical injury, or that she would have testified that a lack of physical findings tended to prove sexual activity did not occur.  As Redenius' suggestion that Mammas would have reached a different conclusion from Fleming's is entirely speculative, it does not support his ineffective assistance claim.[5]  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.

---

[5] Mammas' deposition is contained in the record provided to this Court.  It does not appear to have been included in the paginated postconviction appellate record. (Doc. 13, Ex. 11.)  This Court's review of the state court's decision is limited to the record before the state court in analyzing that court's resolution of the claim.  *See Pinholster*, 563 U.S. at 181-82. The Court takes note that, if this deposition was included in the
(continued...)

1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  *See also Brownlee v. Haley*, 306  F.3d 1043, 1060 (11th Cir. 2002) ("[S]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (stating that offering "only speculation that the missing witnesses would have been helpful" cannot sustain a claim under *Strickland*).

Nor does Redenius show that counsel was ineffective with respect to the other matters about which he believes Mammas would have testified.  He fails to demonstrate a reasonable probability that Mammas' anticipated testimony that she found no cuts, bruises, alcohol,[6] semen, or DNA would have changed the outcome of the proceeding. Redenius does not show that the state court's rejection of his ineffective assistance claim was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  He is not entitled to relief on Ground One.

**Grounds Two and Three**

The victims presented conflicting trial testimony about a day when they rode a bicycle to Redenius' apartment.  J.N. testified on cross-examination that Redenius was

---

[5](...continued)
state court record on appeal, it would further support the rejection of Redenius' claim.  Mammas testified that B.W. had no physical findings, and J.N.'s rectal exam revealed minimal, nonspecific redness.  (Doc. 13, Ex. 1g, pp. 17-19, 37.)  She further testified, similar to Fleming, that most cases of child sexual abuse do not result in physical findings, that the tissue of the anus heals very quickly, and a lack of findings does not show that no sexual activity occurred.  (*Id.*, pp. 21, 25, 33, 37-38.)

[6] With respect to any cuts, bruises, or alcohol, the victims made some allegations, discussed in Grounds Two and Three, *infra*, that Redenius provided them with alcohol and had pulled them off a bicycle and dragged them into his apartment.

outside and told the boys to come over to him before pulling them off the bicycle and dragging them into his apartment by the backs of their shirts.  (Doc. 13, Ex. 1c, pp. 476-78.)  B.W., however, testified on cross-examination that Redenius did not knock them off of the bicycle or pull them into the apartment.  (Doc. 13, Ex. 1b, pp. 361-62, 372.)  He stated that they knocked on the apartment door.  (*Id.*, p. 361.)

Redenius now argues that trial counsel was ineffective for failing to call his neighbors in connection with this alleged incident.   When he raised this claim in his state postconviction motion, Redenius failed to name the potential witnesses, explain with specificity what they would have stated, allege that they were available to testify at trial, or allege that counsel knew of their identities.  (Doc. 13, Ex. 11, p. 20.)  Because Redenius did not provide this information, despite being given an opportunity to amend his motion to include it, the state court denied Redenius' claim as facially insufficient.  (Doc. 13, Ex. 11, pp. 77, 78.)  This was a ruling on the merits.  *See Borden v. Allen*, 646 F.3d 785, 808-16 (11th Cir. 2011) (state court's ruling that a petitioner's vague, unsupported arguments were insufficient to withstand summary dismissal was an adjudication on the merits); *Gaedtke v. Sec'y, Dep't of Corr.*, 369 Fed. App'x 12, 16 n.2 (11th Cir. 2010) (state court's rejection of an ineffective assistance claim as facially insufficient when petitioner did not allege he was prejudiced and therefore "failed the prejudice prong of *Strickland*" constituted a decision on the merits).  Redenius has not shown that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.

In his federal habeas petition, Redenius now states that the witnesses were named Mike Butler and Denise Snow, and states that Butler provided deposition testimony that he

and Snow observed the victims enter Redenius' apartment "of their own free will."  (Doc.

1, p. 6.)  Because Redenius did not identify this information in his postconviction motion,

the claims as they are presented in Grounds Two and Three are procedurally defaulted.

When a federal habeas petition alleges different supporting facts for a claim of

ineffective assistance, the petitioner has not fairly presented his federal claim to the state

court.  *See Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's

argument that "the general claim of ineffective assistance of counsel in state court

preserves for federal review all alleged instances of ineffectiveness, regardless of whether

evidence of a particular act was presented to the state court.").  *See also Anderson v.*

*Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the

federal claim were before the state courts . . . or that a somewhat similar state-law claim

was made."); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas

petitioner may not present instances of ineffective assistance of counsel in his federal

petition that the state court has not evaluated previously.").  Accordingly, the federal claims

brought in Grounds Two and Three were not fairly presented to the state court, and are

unexhausted.   Redenius cannot return to state court to file an untimely, successive

postconviction motion.  *See* Fla. R. Crim. P. 3.850(b), (h).  Therefore, his claims are

procedurally defaulted.  *See Smith*, 256 F.3d at 1138.

Redenius does not specifically allege that he overcomes the default with respect to

Grounds Two and Three.   Notwithstanding the default, however, he fails to show

entitlement to relief.  In cross-examining J.N. and B.W., counsel addressed their differing

recollections of arriving at Redenius' apartment. Counsel further brought out

inconsistencies between J.N.'s trial testimony and deposition testimony with respect to

whether the victims sustained injuries or had their clothing torn when Redenius allegedly pulled them from the bicycle.  (Doc. 13, Ex. 1c, pp. 482-85.)  Furthermore, he questioned B.W. about inconsistencies between his trial testimony and his earlier statements to Detective Skinner concerning the alleged bicycle incident.  (Doc. 13, Ex. 1b, pp. 371-73.)  Counsel also called Skinner.  Skinner testified, contrary to B.W.'s trial testimony, that B.W. told him this incident did occur.  (Doc. 13, Ex. 1d, pp. 697-98.)  In particular, Skinner testified that B.W. told him Redenius ran from some bushes before knocking the boys off the bicycle and dragging them inside.  (*Id.*)  Counsel presented testimony from Redenius' landlord, Morris Ryster, that there were no bushes in front of the apartment that could conceal a person.  (*Id.*, pp. 707-08.)  Finally, counsel presented testimony from Redenius that the alleged bicycle incident never occurred. (Doc. 13, Ex. 1e, pp. 739, 770-72.)

After counsel drew out all of this information, the prosecutor conceded that any statement by the victims that Redenius pushed them off the bicycle and forced them into the apartment was fabricated.  He told the jury in closing argument:

> Keep in mind that as to the sexual acts the boys are consistent.  The boys are consistent as to the sexual acts.  Where they're not consistent is as pertains to the knife incident, the being dragged off their bike and being dragged into the apartment, as to the verbal threats.[7]  They're not consistent as to those.  Why?  Because they are not true.  They clearly made it up.  But they made it up because if they don't make it up society will judge.  Some members of society will say, well, you boys are gay or you boys, you know, enjoy being with men and so on.  So it makes sense that these boys would make it up.

(*Id.*, pp. 904-05.)

Thus, the jury knew that the alleged bicycle incident did not occur, and counsel

---

[7] The victims also provided some statements and testimony that Redenius threatened them with a knife.  Redenius' claim does not involve this allegation.

brought forth the victims' inconsistent statements about the matter.  Redenius does not show that counsel acted deficiently in failing to present additional testimony about the circumstances under which the victims entered the apartment, or that there is a reasonable probability the outcome of trial would have been different had counsel done so.

To the extent Redenius may assert that the anticipated testimony of Butler and Snow would have shown that J.N. and B.W. were untrustworthy witnesses in a more generalized sense, his argument is speculative and vague.  Such an assertion cannot sustain a claim of ineffective assistance of counsel.  *See Tejada*, 941 F.2d at 1559. The jury was aware of the victims' conflicting statements about this fictitious incident.  Counsel also cross-examined the victims in detail about differences between their trial testimony and their deposition testimony or their statements to police on numerous matters.  (Doc. 13, Ex. 1b, pp. 346-385; Ex. 1c, pp. 386-407, 460-510.)

Specifically, counsel addressed B.W.'s inconsistent statements with respect to whether Redenius threatened him with a knife or used a knife to force him to have sex; how many times he went to Redenius' apartment and how many times "bad touches" occurred; whether he said he was forced into sex to avoid getting in trouble; whether he and J.N. discussed what to say about the events; whether he saw pictures or video showing Redenius performing bad touches; and whether he remembered another boy at Redenius' apartment being directed to engage in sexual activity.  (Doc. 13, Ex. 1b, pp. 366-78, 380, 382-85; Ex. 1c, pp. 397-401, 405-07.)  B.W. also admitted on cross-examination that he faced charges in the juvenile justice system and that he hoped to gain favor with the State for his testimony against Redenius.  (Doc. 13, Ex. 1c, pp. 405-07.)

Counsel also addressed J.N.'s inconsistent statements regarding whether Redenius

made him engage in a particular sex act; whether Redenius committed bad touches on the last day the boys went to his apartment; whether Redenius ever used a condom, locked the boys in a bedroom, or had them drink alcohol; and when and why he brought other children to Redenius' apartment.  (*Id.*, pp. 467-70, 487-89, 492-95, 497-500.)

Redenius cannot show that counsel acted unreasonably in not calling Butler and Snow to testify that the victims voluntarily entered Redenius' apartment.  Nor does he establish a reasonable probability the outcome of trial would have been different had he done so.  Redenius is not entitled to relief on Ground Two or Ground Three.

**Grounds Five, Six, and Seven**

In Ground Five, Redenius argues that counsel was ineffective for failing to call a "key witness."  (Doc. 1, p. 11.)  He alleges that police reports indicate the victims saw a video containing images of a girl from their school, but that this girl "denied knowing of any such video or even knowing [Redenius]."  (*Id.*)  Similarly, in Ground Six, Redenius alleges that police reports indicate the victims said that another boy was at Redenius' apartment and was forced to "do sexual things."  (*Id.*, p. 12.)  But he states that the boy denied the allegations when questioned by police.  Redenius argues that counsel was ineffective for failing to call these children to demonstrate that J.N. and B.W. lied.  In Ground Seven, Redenius asserts that counsel was ineffective for failing to impeach and question witnesses.  He asserts that the record demonstrates numerous differences between witness reports, depositions, and trial testimony.

When Redenius raised these claims in his postconviction motion, the state court denied them as facially insufficient because Redenius failed to provide specific information in support of the claims despite having a chance to amend his motion.  (Doc. 13, Ex. 11,

pp. 77-78.)  Thus, the state court rejected these claims on the merits because Redenius failed to present specific information showing entitlement to relief.  As his claims are vague and unsubstantiated, Redenius does not show that the state court's ruling was objectively unreasonable.[8]  He does not demonstrate that the state court's resolution of the claims was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Grounds Five, Six, and Seven do not warrant relief.

**Redenius' Claim Of Ineffective Assistance of Postconviction Counsel**

In his federal habeas petition and in his reply,[9] Redenius alleges that postconviction counsel failed to amend the postconviction claims that the state court ultimately denied as facially insufficient.  Therefore, he asserts that he "had ineffective assistance of counsel for . . . [his] post conviction relief."  (Doc. 1, p. 20.)  To the extent Redenius intends to bring an independent claim of ineffective assistance of postconviction counsel, he fails to raise a cognizable claim for relief.  A criminal defendant has no due process right to postconviction counsel.  *Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987).  "There is no constitutional right to an attorney in state post-conviction proceedings."  *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted).  Accordingly, Redenius can show no federal

---

[8] Within Ground Seven, Redenius states that counsel was ineffective because "the only witness called on [his] behalf was not even questioned on key issues."  (Doc. 1, p. 14.)  He states, "I was accused of hiding behind bush[e]s at my apartment.  There are no bush[e]s and my lawyer fail[ed] to question this."  (*Id.*)  To the extent Redenius may assert that counsel did not question his landlord, Morris Ryster, about whether there were bushes by Redenius' apartment, the record refutes this claim.  (Doc. 13, Ex. 1d, pp. 707-08.)

[9] Because Redenius' reply (Doc. 16) omitted several pages, the Court entered an order (Doc. 17) directing him to file an amended reply.  His amended reply (Doc. 18) is also missing numerous pages.  The original and amended replies appear to be copies of the same document.  Therefore, the Court will consider them together.  The only page both replies are missing is page 43.  As Redenius was directed to ensure that all pages were included in his amended reply, the Court will review the reply without page 43.

constitutional violation due to alleged ineffective assistance of postconviction counsel. *See* 28 U.S.C. § 2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

To the extent Redenius' assertion can be liberally interpreted as attempting to invoke the cause and prejudice exception to overcome the procedural default of the claims raised in Grounds Two and Three, he is not entitled to relief. *Martinez v. Ryan*, __U.S.__, 132 S.Ct. 1309 (2012) provides a narrow, equitable exception to the rule that ineffective assistance of postconviction counsel does not constitute cause to overcome a procedural default. *Id.* at 1320. To meet the *Martinez* exception, among other requirements, a petitioner must demonstrate that postconviction counsel was ineffective for failing to raise a "substantial" claim of ineffective assistance of trial counsel that has "some merit." *Id.* at 1318, 1320. Even assuming the other requirements of *Martinez* are met, however, Redenius has failed to establish any substantial grounds of ineffective assistance of trial counsel, as addressed in Grounds Two and Three, *supra*.

**Redenius' Reply**

In his reply, Redenius raises additional allegations of ineffective assistance of trial counsel. Redenius may not bring new, independent claims for relief in the reply. *See Herring*, 397 F.3d at 1342 ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (citations omitted). To the extent that Redenius attempts to further explain the general claims of ineffective assistance presented in Grounds Five and Seven, his allegations are unexhausted and procedurally defaulted because Redenius did not raise them in state court. To the extent

Redenius seeks to apply *Martinez* to establish cause by arguing that postconviction counsel was ineffective for not raising these allegations in his postconviction motion, he cannot overcome the default.   He has not presented any substantial claims of ineffective assistance of trial counsel.   Redenius' assertions are addressed below.

**A.**     Regarding his claim that counsel was ineffective for failing to call a girl to testify contrary to the victims' alleged statements that she had no involvement with Redenius, Redenius now states what he "assume[s]" the girl's first name was and asserts that he never had a video camera.  (Doc. 16, p. 27.)   Redenius fails to explain how calling this individual would have aided the defense.  To the extent he argues that her testimony would have supported his contention that B.W. and J.N. were untrustworthy witnesses, he has not shown either deficient performance or resulting prejudice.  First, as Redenius asserts she was not subpoenaed because "her parents did not want her involved," it appears this witness may have been uncooperative.   Furthermore, counsel extensively cross-examined both victims about their inconsistent statements.  Redenius does not establish that counsel acted unreasonably in failing to call this one additional witness, or a reasonable probability that the outcome of trial would have been different had counsel done so.

**B.**     Redenius claims trial counsel was ineffective for failing to challenge the testimony of J.N.'s grandmother.  J.N.'s grandmother testified about a time when she and J.N. went into the Circle K where Redenius worked.   She testified that she attempted to talk to Redenius, but that he ignored her.  (Doc. 13, Ex. 1c, pp. 549-51.)

J.N. testified during trial that he did not remember going the store with his grandmother.   (*Id.*, p. 438.) Apparently on the basis of this testimony and his own recollection that J.N.'s grandmother only briefly came into the store once to pick up J.N.,

Redenius claims that she "ma[de] up a big story for the State and [counsel] did not one [sic] thing to challenge her testimony." (Doc. 16, pp. 28-29.)

Counsel did thoroughly cross-examine J.N.'s grandmother about her testimony, asking about her trip to the store with J.N. and her interaction with Redenius. (Doc. 13, Ex. 1d, pp. 562-65.)  He elicited her concession that Redenius, who was not a friend of hers, may have been preoccupied with his work, and that not every store employee would be expected to interact with a customer in a friendly and outgoing way. (*Id.*)  Thus, he addressed the details of her being in the store with J.N., including her claim that Redenius ignored her.  Redenius does not establish that failing to ask her any further questions about whether she was there with J.N., or under what circumstances, constituted deficient performance.  Nor does he show a reasonable probability that doing so would have changed the outcome of trial.

**C.**     Redenius claims counsel was ineffective for doing nothing to "un-confuse the matter" when, he alleges, B.W. became confused during counsel's cross-examination. (Doc. 16, p. 29.)  Redenius appears to point to the following exchange:

> Q.     [ ] And you didn't see - - and while you're stating that Mr. Redenius did this to [J.N.] for about three minutes on that same day, that he didn't use any lubricant in regard to [J.N.], correct?
>
> A.     Yes.
>
> Q.     He did not?
>
> A.     He didn't, no.
>
> Q.     Okay.  And it's your statement that [Redenius] didn't put anything on himself, on his private, a condom or anything, when he did this to [J.N.]?
>
> A.     Yeah.

Q.      He did not?

A.      He didn't, no.

Q.      I'm sorry?

A.      He did not.

Q.      Okay.  I'm sorry to keep doing that.  I want to make sure it's very clear not only for the jury but the court reporter is taking it all down.  Okay?

A.      Yeah.

Q.      And when you're saying that - - while you're saying that Mr. Redenius did this act, put his penis in [J.N.]'s buttocks for about three minutes on that day, it's your statement that you heard [J.N.] say that it hurt?  I mean, you were there and [J.N.] was saying hey, that hurts?

A.      Yes.

Q.      I got a little bit confused.  So I'm just going to go ahead and ask you about the numbers that you were talking about as far as the things that you're claiming Mr. Redenius did to you.  Okay?

(Doc. 13, Ex. 1b, pp. 355-56.)  Counsel went on to ask B.W. about the number of times he alleged Redenius committed various sexual acts.  (*Id.*, pp. 356-58.)  The record reflects that, contrary to Redenius' argument, counsel asked B.W. questions to clarify his testimony.  Redenius does not identify any lingering confusion in this portion of B.W.'s testimony that counsel failed to address.  He has not demonstrated either deficient performance by counsel or resulting prejudice.

**D.**      Redenius claims that when counsel asked J.N. the distance between the road and Redenius' apartment, J.N. said it was fifteen feet.  Redenius asserts that counsel was ineffective for failing to determine the actual distance, which he states was 100 feet. Redenius claims that "[t]his fact makes a big difference" to the extent the boys alleged that he dragged them from the bicycle into the apartment.  (Doc. 16, p. 30.)  Redenius fails to

show prejudice.  As the jury knew that the bicycle incident never happened, Redenius fails to show a reasonable probability that addressing one more detail about it would have resulted in a different outcome at trial.

**E.**     Redenius asserts that "[i]n either a police report or his deposition B.W. stated that I made him drink gin and smoke 10 cigarettes." (Doc. 16, p. 31.)  B.W. testified at trial that Redenius gave him cigarettes, beer, and liquor.  (Doc. 13, Ex. 1b, p. 312.)  Redenius further argues that "what B.W. told police is a whole different story."  (Doc. 16, p. 31.)  He claims that counsel was ineffective for failing to impeach B.W.  In support, however, Redenius points to a portion of Skinner's testimony in which he stated that J.N., not B.W., told Skinner that Redenius had not given them alcohol.  (Doc. 13, Ex. 1d, p. 696.)  Thus, Redenius has not specified any prior inconsistent statement by B.W. with which counsel could have impeached B.W.

J.N. testified at trial that he did not remember whether Redenius made him drink wine coolers one day.  (Doc. 13, Ex. 1c, p. 499.)  But, J.N. testified in his deposition that Redenius did force him to drink wine coolers.  (*Id.*)  And during the investigation, J.N. told Skinner that Redenius never gave him alcohol.  (Doc. 13, Ex. 1d, p. 696.)  Although Redenius asserts that counsel was ineffective for failing to impeach J.N., counsel did cross-examine J.N. about making these statements.  (Doc. 13, Ex. 1c, pp. 499-500.)  Redenius does not specify what else counsel should have done.  He has not demonstrated ineffective assistance of counsel or resulting prejudice with respect to either victim's testimony.

**F.**     Redenius addresses inconsistent statements by B.W. and J.N. about the bicycle incident and alleges that counsel was ineffective for not impeaching them with such statements.  Redenius does not meet either prong of *Strickland*.  As addressed in Grounds

Two and Three, *supra*, counsel did impeach B.W. and J.N. with their prior inconsistent statements about the bicycle incident, and Redenius has not shown prejudice as a result of counsel's performance.

**G.**      The last night that B.W. and J.N. went to Redenius' apartment, B.W.'s older brother knocked on the door and confronted Redenius.   B.W. and J.N. testified that they fled through the back of the apartment when this happened.   B.W. testified that J.N. ran out of the apartment and jumped the fence.   (Doc. 13, Ex. 1b, pp. 335-36.)   Redenius states that this was impossible because the fence was ten feet high.   He argues that counsel was ineffective for not asking his landlord, Morris Ryster, to establish the fence's height.

When J.N. was asked if he jumped over anything after he ran out the back of the apartment, he simply stated that he rode his bike home and gave no indication that he jumped a fence.   (Doc. 13, Ex. 1c, p. 455.)   Thus, the jury heard descriptions of what J.N. did after leaving the apartment that contained at least some variation.   Redenius has not shown ineffective assistance of counsel due to counsel's failure to further address this matter through Ryster's testimony.   Nor has he established any reasonable probability that information about the fence was of such import to the case or to the victims' credibility that the outcome of trial would have been different had counsel elicited it from Ryster.

**H.**      J.N. testified that the last time he left Redenius' apartment, he ran out to the road. (Doc. 13, Ex. 1c, p. 455.)   On cross-examination, he stated that he saw the police across the street.   (*Id.*, pp. 495-96.)   Redenius asserts that trial counsel was ineffective for failing to impeach J.N. because J.N. "never mentioned anything about the police being there before."   (Doc. 16, p. 35.)

At trial, counsel asked J.N. if, after running outside, he "saw some police across the

street apparently talking to a couple of [B.W.'s brother's] friends that lived across the street there". (Doc. 13, Ex. 1c, p. 495.)  J.N. said that he did.  Counsel then asked J.N. about the fact that he did not approach the police to report what happened.  (*Id.*, p. 496.)  Redenius simply has not demonstrated, however, that counsel was ineffective for not asking J.N. about allegedly mentioning the presence of police for the first time at trial, or that there is a reasonable probability the outcome of trial would have been different had he done so.

**I.**     B.W. testified that when he ran out of Redenius' apartment after his brother arrived, he hid outside.  (Doc. 13, Ex. 1b, pp. 334-36.)  Redenius states that counsel was ineffective for not questioning B.W. why, if Redenius allegedly abducted him, he felt the need to hide. But Redenius does not point to any part of B.W.'s testimony indicating that B.W. abducted them.  To the contrary, B.W. testified that Redenius did not pull the boys off the bicycle and into the apartment that day and that they knocked on his apartment door.  (*Id.*, pp. 361-62.) Accordingly, Redenius fails to show that counsel was ineffective for not posing such questions to B.W., or that there is a reasonable probability the outcome of trial would have been different had counsel done so.

**J.**     Redenius argues that B.W. made inconsistent statements about whether another boy, C.T., was made to engage in sexual activity involving a bottle.  Specifically, he alleges that "[d]uring his deposition he knew nothing about it, then at my trial he testifies he knows it happened." (Doc. 16, p. 38.)  He claims that counsel failed to impeach B.W.  However, counsel elicited B.W.'s testimony that this incident occurred with C.T., and pointed out that B.W. testified during his deposition that he did not remember C.T. being present and did not remember anything about the event.   (Doc. 13, Ex. 1b, pp. 382-84.)   Counsel addressed B.W.'s varying statements about this matter.

Redenius also alleges that J.N. testified he was made to engage in this same sexual activity, but "he [did] not say anything about C.T."  (Doc. 16, p. 38.)  Although Redenius asserts counsel failed to impeach J.N., he does not explain how counsel could have challenged J.N.'s testimony simply because J.N. did not mention C.T.  Redenius has not established either deficient performance or resulting prejudice with respect to these portions of the victims' testimony.

**K.**     The victims testified that Redenius directed them to engage in sexual activity with one another while he watched.  Redenius alleges that both boys testified at deposition that Redenius was clothed.  He points out that J.N. testified at trial that Redenius was not clothed and was masturbating.   (Doc. 13, Ex. 1c, p. 448.)  B.W. also testified at trial that Redenius masturbated while B.W. and J.N. were engaged in a sex act.  (Doc. 13, Ex. 1b, pp. 322, 333.)[10]

Redenius asserts that "[t]he story is another made up lie and then changed by the State because the first story was not logical, nor dramatic enough."  (Doc. 16, p. 40.)  However, he has not supported his claim with any record evidence of the depositions, nor does he specifically allege that the boys never stated in their depositions that he masturbated.  Accordingly, Redenius has not met his burden of establishing that counsel's failure to point out the alleged discrepancy was deficient performance, or that he suffered resulting prejudice.

**L.**     Finally, Redenius makes a generalized statement that he "is very confused about who was raped when and who was made to do what.  Which story the State wants to use

---

[10] It appears that the act of masturbating in the presence of the victims was relevant to count six (lewd and lascivious exhibition).

against me." (Doc. 16, p. 40.)  Redenius fails, however, to make any clear allegation of ineffective assistance of trial counsel.  As addressed throughout the discussion of Redenius' claims, counsel thoroughly cross-examined the victims about their inconsistent statements on numerous issues at Redenius' trial.

Redenius fails to raise any substantial claim of ineffective assistance of trial counsel with some merit.  Accordingly, he has not shown that the *Martinez* exception applies to establish the cause and prejudice exception and overcome the procedural default of any ineffective assistance of trial counsel claim in his reply.

It is therefore

**ORDERED** that Redenius' petition for writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk is directed to enter judgment against Redenius and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is **ORDERED** that Redenius is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Redenius "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4

(1983)).  Redenius has not made the requisite showing in these circumstances.  Finally,

because Redenius is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on January 19, 2017.

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


William Redenius
Counsel of Record